ELIZA WILLIAMS, *Appellant,* v. MELISSA CAMPBELL
*et al., Appellees.* .

No. 16,844.

SYLLABUS BY THE COURT.

EVIDENCE—*Transactions Had with Persons Since Deceased—. Title of Adverse Party Not Acquired Immediately from Decedent.* A plaintiff who is suing to recover real estate claimed by her by virtue of being the wife of the decedent, where the defendants are the grandchildren and great-grandchildren of the decedent and acquire their interest in the real estate through the daughter of the decedent, is not prohibited by section 320 of the civil code from testifying to communications and transactions had personally with the decedent, as the parties adverse to her did not acquire their title to the cause of action *immediately* from the decedent.

Appeal from Atchison district court.   Opinion filed.
February 11, 1911.   Reversed.

*B. F. Hudson,* for the appellant.

*B. P. Waggener,* for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.:   Eliza Williams brought an action
of ejectment, claiming ownership and right of posses-
sion of an undivided one-half of several tracts of real
estate and alleging that the four defendants named
each own an undivided one-eighth interest in the land..
She also asked for $12,500, one-half the value of the
rents and profits of the lands that had accrued within
the past three years.

The defendants answered denying that the plaintiff
had any interest in the lands and alleging that they
were the owners in fee simple of all the lands claimed..
They also alleged that Edwin R. Brown, whom the
plaintiff claimed was her husband, was married to
Sarah Howard in 1832, and that the only children of
that marriage were Mary Brown and Melissa Brown;
that the latter subsequently married and became Mrs.
Taliaferro; that Edwin R. Brown acquired the real
estate in Kansas, and that in 1874 his wife died; that
he did not thereafter marry, and that in 1883 he died
testate.   He gave specific pieces of property to his
daughter Melissa and her children, and the residue of
the estate was given to Mary Brown, who was named
as executrix.   The will contained a clause that referred
to the plaintiff as follows:

"Remembering the kind and faithful services of
Amanda Henley and Eliza Williams, long servants in
my family, I enjoin upon my said daughters in turn
that they see that said women are well provided for in
their declining years."

It was further alleged that under the provisions of
that will Mary Brown took possession of her portion of

the estate, including that in question, and occupied it until 1909, when she died unmarried; that prior to her death she made a will disposing of the lands in question to the children and grandchildren of her deceased sister; that Mary Brown had improved and occupied the lands for more than twenty years, and during that time the plaintiff claimed no interest or title in them, although she occupied a small part of the lands as a tenant of Mary Brown. It was also alleged that the plaintiff had full knowledge of the disposition of the lands under the Edwin R. Brown will, and acquiesced in it and was estopped and barred to make any claim at this time; that Mary Brown had, in accordance with the injunction in her father's will, given the plaintiff clothing, provisions and money, and that it was so accepted by the plaintiff. By way of cross-petition it was alleged that the plaintiff was claiming an interest in the lands without right, thus creating a cloud thereon, and that one William C. Rigg, acting in collusion with the plaintiff, was also setting up some claim of interest, and that he was a necessary party. The prayer was that he be made a party and required to answer, that the defendants be adjudged to be the owners of the land, and that the plaintiff and Rigg be barred and enjoined from setting up any claim or interest in it.

The day after the filing of the answer and cross-petition another application was made to make Rigg a party, and for an order for publication service, and, this being granted, a cross-petition was filed containing averments similar to those in the cross-petition which formed a part of the answer previously filed. A few days later a motion was made to strike out the cross-petitions, and an order was made which on its face struck them out absolutely, but at a later date the court corrected it to correspond with the facts by making the order to strike out apply to William C. Rigg only. After the order striking out the cross-

petition was made, the plaintiff filed a reply, consisting of a general and some special denials—averments that she had occupied the premises as a cotenant of Mary Brown, and with her consent, and that no action for a division of the land was brought because of a promise by her that she would see that the plaintiff's rights in the property were secured to her; that Mary Brown well knew the relationship that existed between the plaintiff and her father, and had never denied the plaintiff's title to the property or her right to possession as a cotenant of Mary Brown.

Shortly afterward the parties proceeded to trial, and after some testimony was offered in behalf of the plaintiff, and an adverse ruling, the plaintiff dismissed her action without prejudice and the parties proceeded to trial on the cross-petition of the defendants. After testimony had been introduced in support of defendants' contention the plaintiff proceeded to testify in her own behalf, and when she was asked as to a conversation between her and Edwin R. Brown, in which they agreed to live together as man and wife, and of their cohabitation and the carrying out of the agreement, an objection was made that she was incompetent to testify to transactions with the deceased Brown, and also that the testimony was not within the issues of the case. The proposed testimony was excluded, and subsequently judgment was given for the defendants.

The principal question involved in this appeal of the plaintiff's arises on the exclusion of her testimony. Were the communications and transactions between her and Edwin R. Brown, when he was living, within the prohibition of section 320 of the civil code? It reads:

"No party shall be allowed to testify in his own behalf in respect to any transaction or communication had personally by such party with a deceased person, when the adverse party is the executor, administrator, heir at law, next of kin, surviving partner or assignee

4—84 KAN.

of such deceased person, where they have acquired title to the cause of action immediately from such deceased person," etc.

It will be observed that the disqualification arises only when the adverse party is an executor, administrator, heir at law, next of kin, surviving partner or assignee of such deceased person who has acquired title to the cause of action immediately from the deceased person. The defendants were not executors, administrators, surviving partners or assignees of Edwin R. Brown, deceased. It is claimed they were his heirs or next of kin, but if for some purposes these grandchildren and great-grandchildren of his might be so regarded they are not within any of the classes mentioned in the statute. They are not heirs at law or next of kin who have acquired title to the cause of action immediately from him.

The word "immediately" is defined by Webster's New International Dictionary as "without intermediary; in direct connection or relation; in a way to concern or affect directly or closely; without intervention of any person or thing; proximately; directly; closely." Now, the title to the cause of action involved here was not acquired immediately or directly by the defendants from Edwin R. Brown, but was derived from or through Mary Brown. It is argued that there is as much reason why the plaintiff should be prohibited from testifying, the same danger of false testimony, as if the adverse party had acquired the lands in dispute directly from Edwin R. Brown. But a party offering himself as a witness is not to be rejected unless the adverse party comes clearly within one of the classes enumerated in the code. Competency is the rule, and disqualification is the exception. Neither interest in the result of the litigation nor incompetency operates to disqualify a party except upon the specific conditions named in the statute. The

court is not inclined to extend this exception by inter-
pretation. (*Bryan v. Palmer*, 83 Kan. 298; *Hess v.
Hartwig*, 83 Kan. 592.)   On the contrary, it has been
said that "the present judicial tendency is undoubt-
edly to give a liberal construction to statutes removing
disqualifications to testify, and a strict construction to
those imposing them—to endeavor to protect the rights
of parties by requiring evidence from a doubtful
source to be given only such weight as the circum-
stances may seem to justify, rather than by excluding
it altogether." (*Clifton v. Meuser*, 79 Kan. 655, 658.)
But it is not necessary to apply a strict rule of inter-
pretation to this statutory restriction.   Giving the
language of the provision its natural and ordinary
meaning, it is clear that the defendants can not be
regarded as having acquired title to the cause of action
immediately from Edwin R. Brown.   (*Reville v. Du-
bach*, 60 Kan. 572; *Knights of Pythias v. Ferrell*, 83
Kan. 491.)

The contention that the plaintiff had not joined issue
on the cross-petition of the defendants can not be sus-
tained.   While the plaintiff did not file an independent
answer to the separate cross-petition, she did file a
reply broad enough in its terms to meet the allegations
of the cross-petition pleaded in the answer, as well as
the separate reply filed a day or two later.   Testimony
was offered by the defendants and both parties pro-
ceeded with the trial as if the case was at issue, and it
would be a harsh and technical ruling to hold that the
testimony should be excluded because issue had not
been joined.   Nor can it be held that the ruling did
not affect the substantial rights of the plaintiff.   It
deprived her of the opportunity to show what were
her relations with the deceased, and unless she is per-
mitted to show a marriage relation with Brown she
has no standing to claim title or interest in the prop-
erty involved.   This ruling at the threshold of the
trial of her side of the case practically concluded her

and made her testimony on other branches of the case valueless.

While some of the claims made in her behalf are abnormal and strange, her rights ought not to be finally determined until competent witnesses produced by her are heard and her testimony tending to establish her claim has been received and weighed. The judgment is reversed and the cause remanded for a new trial.