LIBBY G. HYDE *vs.* CONNECTICUT COMPANY.

MALTBIE, C. J., HINMAN, BANKS, AVERY and BROWN, Js.

Argued November 4th—decided December 1st, 1936.

*Charles V. James,* with whom, on the brief, was *Arthur M. Brown,* for the appellant (defendant).

*Foster K. Sistare* and *George C. Morgan,* for the appellee (plaintiff).

AVERY, J. The plaintiff brought this action claiming that she was a passenger in one of defendant's busses and that she was injured by stepping into a gutter when alighting from the bus. She claimed that the driver was negligent in stopping for her to alight in an unsafe place upon the highway, a considerable distance from the curb, causing her to alight into a gutter laid with rough and uneven stones and depressions and dangerous to walk upon, whereby she was caused to fall and was injured. The case was tried to the jury and resulted in a verdict and judgment for the plaintiff, from which the defendant has appealed, assigning error in the charge of the court in three particulars.

From the finding, it appears that the plaintiff offered evidence to prove and claimed to have proved the following facts: The defendant, a common carrier of passengers, operated a motor bus on Montauk Avenue to the Parade and then over State and Broad Streets

in the city of New London. On September 9th, 1935, in the evening, the plaintiff entered as a passenger defendant's bus on Montauk Avenue and was carried to the Parade where she transferred to another, running thence in a northwesterly direction over Broad Street. She requested the operator to let her out at the stop nearest to Dow Court. Her son lived there. The gutter along Broad Street opposite the intersection of Dow Court was in a sunken, eroded and uneven condition with deep holes between the cobble-stones. At Ledyard Street, the nearest authorized stop to Dow Court, the gutter was level and smooth with the road surface up to the curbline. Instead of stopping there, the driver decided to let the plaintiff off opposite the intersection of Dow Court and stopped the bus on the edge of the macadam shoulder so that the plaintiff in alighting was forced to step down into the gutter. She placed her right foot on the ground and fell and was injured. At the time, it was dusk or dark, and raining, and the plaintiff was not familiar with the surface of the gutter. The bus driver traveled this route many times each day and knew of the condition of the gutter at this point and its rough and uneven surface.

The defendant claimed to have proved, among other things, these facts: At the place in question, Broad Street was paved with concrete. On the northerly edge of the concrete was a macadam shoulder four or five feet in width. Between the macadam shoulder and the curbing on the northerly side of the street was a cobblestone gutter. The operator of the bus did not know the condition of the surface of the gutter at that point and did not drive into it and up to the curb because it was full of leaves and he feared that if he drove into it, its condition might be such that he would be unable to drive the bus out again. Also, he observed the limbs of a tree and believed he could not

drive under them without their striking the top of the bus or the windshield; accordingly he stopped so that the right side of the bus was twelve to fourteen inches southerly of the northerly edge of the concrete pavement.

In instructing the jury, the court called their attention to the rule of the public utilities commission relating to motor busses which provides: "For taking on and discharging passengers a motor bus shall be stopped at the extreme right of the available roadway." The court informed the jury that if they found that the operator did not stop at the extreme right of the available roadway they would be justified in finding that there was negligence in such conduct. The defendant asserts that the court erred in so instructing the jury and claims that the rule in the matter does not have the force of a rule of law but was merely a regulation of the commission for the violation of which the defendant was answerable to it and liable to the penalty provided. General Statutes, Cum. Sup. 1935, § 1409c. With this contention, we cannot agree. The commission is given express authority to make regulations as to the operation of motor busses, including such as concern the convenience and safety of passengers and the public. General Statutes, § 3850. The order in question was made in pursuance of the authority granted to the commission and upon its face showed that it was made in the interest of safety of both the passengers and the public. No claim is made that the order was unreasonable, illegal or beyond the powers of the commission. In this State, violation of a valid municipal ordinance is negligence per se. *Farrington* v. *Cheponis*, 84 Conn. 1, 8, 78 Atl. 652; *Anthony* v. *Connecticut Co.*, 88 Conn. 700, 708, 92 Atl. 672. The valid orders of the public utilities commission certainly stand upon as high if not a higher plane

than municipal ordinances. *Roden* v. *Connecticut Co.,* 113 Conn. 408, 415, 155 Atl. 721. Within their scope, the orders of the commission have the force of statutes. Amer. Law Institute Restatement, Torts, Vol. 2, p. 746; *Arkadelphia Milling Co.* v. *St. Louis Southwestern Ry. Co.,* 249 U. S. 134, 39 Sup. Ct. 237, 240. The trial court was correct in informing the jury that if they found there had been a violation of the rule of the commission which provides that a motor bus, when taking on or discharging passengers, shall be stopped at the extreme right of the available roadway, they would be justified in finding negligence on the part of the defendant. *Murphy* v. *Way,* 107 Conn. 633, 637, 141 Atl. 858; *Andrew* v. *White Bus Line Corp.,* 115 Conn. 464, 467, 161 Atl. 792; *Washburn* v. *LaMay,* 116 Conn. 576, 578, 165 Atl. 791.

The defendant claims also that the court failed to adequately define the meaning of the term "available roadway" as used in the rule of the public utilities commission. In this respect, the court informed the jury that the term "available," as used in the rule, was equivalent to "usable" "capable of being used," quoting from Bouvier's Law Dictionary and Webster. It was left to the determination of the jury from the evidence what the limit of the "available roadway" might be. In this there was no error. The term "available roadway" as used in the order of the public utilities commission is broader than the term "traveled portion of the highway" as defined by us in *Kurtz* v. *Morse Oil Co.,* 114 Conn. 336, 340, 158 Atl. 906. The rule of the commission requires that the bus be stopped on the extreme right of the available roadway, meaning such part of the roadway as is usable—capable of being used.

In the course of his instructions to the jury, the trial judge stated that they would recall where the

driver said he stopped his bus and his explanation for so doing, and that they might consider the operator knew the condition of the gutter in connection with the claim of the plaintiff that the operator was negligent in failing to assist her to alight. At another point in its instructions, the trial court informed the jury that while ordinarily it is not the duty of the driver to warn a passenger of ever-present dangers on the highway, such as moving traffic, yet in the present case the danger was known to the operator and if they found that it was not one to be contemplated by the passenger, if they found such a danger existed, it was for them to determine whether the driver was negligent in failing to assist the plaintiff to alight. Thus in both instances the court assumed and so informed the jury that the driver had knowledge of the condition of the gutter. The statement of the court in the finding as to the claims of the parties is not attacked, and is the only basis for testing the correctness of the charge. From this it appears that the knowledge of the driver as to the condition of the surface of the gutter was a matter directly in controversy, and the determination of this fact was a material consideration in determining whether or not the driver was negligent, and thus was a material element in the determination of the case. Upon this record, we are constrained to hold that the trial court was in error in removing the decision of this controverted fact from the determination of the jury. *Ezzo* v. *Geremiah,* 107 Conn. 670, 674, 675, 142 Atl. 461; *Jackiewicz* v. *United Illuminating Co.,* 106 Conn 302, 306, 138 Atl. 147; *Blake* v. *Waterbury,* 105 Conn. 482, 485, 136 Atl. 95.

There is error and a new trial is ordered.

In this opinion the other judges concurred.