RALPH BAILEY ET AL. *v.* BRUNEAU'S TRUCK SERVICE, INC., ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

 

Argued October 4—decided November 21, 1961

*Philip R. Shiff,* with whom was *Alan H. W. Shiff,* for the appellants (defendants).

*John P. McKeon,* with whom, on the brief, were *Morton E. Cole* and *Cyril Cole,* for the appellees (plaintiffs).

SHEA, J. The plaintiffs brought this action to recover for personal injuries and property damage alleged to have been caused by the negligence of the defendants. The jury returned verdicts for the plaintiffs, and the defendants have appealed from the judgments rendered thereon. Error is assigned in the court's charge to the jury, in its refusal to charge the jury as requested, and in its denial of the defendants' motion to set aside the verdicts as excessive.

The material facts claimed to have been proved by the plaintiffs are the following: On February 1, 1956, about 4:40 a.m., the plaintiff Ralph Bailey was operating a tractor-trailer truck owned by the plaintiff John Gurry in a northerly direction on route 15 in the town of Union. Suddenly there was a noise. Bailey applied his brakes, but he was unable to stop the truck because air was escaping and there was not sufficient pressure to operate the brakes. He drove to the side of the road and rolled along until the truck stopped automatically on the east shoulder. He did not know that the truck was disabled. He got out on the driver's side, walked around the front of the truck to the right side and raised the hood to find the trouble. While he was getting out of the truck, a tractor-trailer truck owned and driven by the plaintiff Arthur Albertelli passed him, headed in the same direction. Albertelli pulled off the traveled portion of the highway and stopped his truck about 300 feet north of, and in front of, Bailey. Albertelli ran down the road and joined Bailey to assist him. While both men were on the right side of the Gurry truck, it was struck in the rear by the defendants' truck, which continued northward and struck the side of the Albertelli truck. Bailey and Albertelli were injured, and the Gurry truck was badly damaged.

The defendants offered evidence to prove and claimed to have proved the following facts: At the time of the collision, the plaintiffs were engaged in the transportation of freight in interstate commerce, and the operation of the Gurry and Albertelli trucks was governed by safety regulations promulgated by the interstate commerce commission. As the Gurry truck was proceeding northerly on route 15, air escaped from the lines controlling the air

brakes of the truck, making the brakes inoperative. When this occurred, a safety device on the truck caused the trailer wheels to lock automatically and bring the truck to a stop. It was then a disabled vehicle within the meaning of the regulations of the interstate commerce commission, and Bailey knew that it could not be operated on the highway. He did not place flares or other emergency signals on the highway but attempted to remedy the trouble. He was so engaged when the collision occurred. Albertelli knew that the Gurry truck was in trouble when he left his own truck and went to assist Bailey. Albertelli did not place any flares or other emergency signals on the highway. The accident occurred at a time and under conditions when the plaintiff drivers were under a duty to comply with the I.C.C. regulations. Because of their failure to do so, they were negligent, and such negligence was the proximate cause of the collision and of the injuries and damage resulting therefrom.

In a special defense of contributory negligence, the defendants alleged that the plaintiff drivers failed to set flares and take other reasonable precautions to warn other travelers of the presence of the trucks on the highway, that Bailey was operating the Gurry truck as the agent of Gurry and in the course of his employment, and that the negligence of Bailey was imputed to Gurry.

The defendants requested the court to charge the jury that the trucks operated by Bailey and Albertelli were engaged in interstate commerce, that they were subject to the I.C.C. regulations, that it was the duty of Bailey and Albertelli to comply with these regulations, and that if they failed to do so they were guilty of negligence as a matter of law. The request contained the I.C.C. regulations which

were in effect at the time of the accident. I.C.C. Motor Carrier Safety Regs. §§ 192.22, 192.23 (Rev. 1952); 49 C.F.R. §§ 192.22, 192.23 (1961).[1]

In its charge, the court directed the attention of the jury to what is now § 14-95 of the General Stat-

---

[1] "[DRIVING OF MOTOR VEHICLES. SUBPART C—STOPPED VEHICLES.] § 192.22. EMERGENCY SIGNALS; DISABLED VEHICLE. Whenever any motor vehicle is disabled upon the traveled portion of any highway or the shoulder thereof, when lighted lamps are required, except in a municipality where there is sufficient highway lighting to make it clearly discernible to persons and vehicles on the highway at a distance of 500 feet, the following requirements shall be observed: (a) The driver of such vehicle shall immediately place on the traveled portion of the highway at the traffic side of the disabled vehicle, a lighted fusee, a lighted red electric lantern, or a red emergency reflector. (b) Except as provided in paragraphs (c) and (d) of this section, as soon thereafter as possible, but in any event within the burning period of the fusee, the driver shall place three liquid-burning flares (pot torches), or three red electric lanterns, or three red emergency reflectors on the traveled portion of the highway in the following order: (1) One at a distance of approximately 100 feet from the disabled vehicle in the center of the traffic lane occupied by such vehicle and toward traffic approaching in that lane; (2) One at a distance of approximately 100 feet in the opposite direction from the disabled vehicle in the center of the traffic lane occupied by such vehicle; and (3) One at the traffic side of the disabled vehicle, not less than 10 feet to the front or rear thereof. If a red electric lantern or red emergency reflector has been placed on the traffic side of the vehicle in accordance with paragraph (a) of this section, it may be used for this purpose. (c) If disablement of any motor vehicle shall occur within 500 feet of a curve, crest of a hill, or other obstruction to view, the driver shall so place the warning signal in that direction as to afford ample warning to other users of the highway, but in no case less than 100 feet nor more than 500 feet from the disabled vehicle. (d) If gasoline or any other flammable or combustible liquid or gas seeps or leaks from a fuel container of a motor vehicle disabled or otherwise stopped upon a highway, no emergency warning signal producing a flame shall be lighted or placed except at such a distance from any such liquid or gas as will assure the prevention of a fire or explosion.

"§ 192.23. EMERGENCY SIGNALS; STOPPED OR PARKED VEHICLES. Whenever for any cause other than disablement or necessary traffic stops, any motor vehicle is stopped upon the traveled portion of any highway, or shoulder thereof, during the time lights are required,

utes, relating to emergency lighting equipment.[2] The court charged in part as follows: "You will recall that he [Bailey] got out of his car on the left side and went around and lifted up the hood to determine what was the trouble. If you find that as a result of what he found, his car was stalled or was in such a condition that it could not be operated on the particular highway, then this particular statute would apply. The statute provides that he shall have ready for immediate use this particular equipment, so that it is up to you to determine, first, whether his car had become stalled, or whether such condition existed that the truck could not be operated upon the highway. After that has been determined, then he was bound to follow the terms of the statute. If you find that he did not follow the terms of the statute, then, of course, that would be negligence.

"Now, we also have an I.C.C. regulation which

except within a municipality where there is sufficient highway lighting to make clearly discernible persons and vehicles on the highway at a distance of 500 feet, the following requirements shall be observed: (a) The driver of such vehicle shall immediately place on the traveled portion of the highway at the traffic side of the vehicle, a lighted fusee, a lighted red electric lantern, or a red emergency reflector (see § 192.22 [d]). (b) If the stop is to exceed 10 minutes, the driver shall place emergency signals as required and in the manner prescribed by § 192.22 (b), (c), and (d)."

[2] "Sec. 14-95. EMERGENCY LIGHTING EQUIPMENT. (a) There shall be carried on . . . each combination of tractor and trailer, when it is operated on any highway outside the limits of a city during the period from one-half hour after sunset to one-half hour before sunrise, flares, flaring candles, torches or lanterns or other devices for emergency lighting, which devices shall be ready for immediate use. The operator . . . shall cause such emergency equipment to be kept lighted, in such manner as to be visible for at least two hundred feet in front and in the rear of such motor vehicle, during any period between one-half hour after sunset and one-half hour before sunrise when such motor vehicle has become stalled or is in such condition that it cannot be operated on the highway. . . ."

provides, whenever any motor vehicle is disabled upon the traveled portion of any highway or the shoulder thereof, . . . the following requirements shall be observed. First, the driver of such vehicle shall immediately place on the traveled portion of the highway at the traffic side of the disabled vehicle, a lighted fusee, a lighted red electric lantern, or a red emergency reflector and as soon thereafter as possible, but in any event, within the burning period of the fusee, the operator shall place three flares . . . on the traveled portion of the highway, in the following order: First, one a distance of approximately one hundred feet . . . . Secondly, one at a distance of approximately one hundred feet in the opposite direction . . . . Now, you will recall that the statute provides 'Shall immediately place on the traveled portion of the highway.' Now, the term 'immediately' as used in the Interstate Commerce regulation must be given the following meaning, namely: 'The word "immediately" where used in connection with human conduct, as in the case of a requirement that a certain thing shall be done immediately, is generally held to require that the act shall be performed, not instantly, but without unreasonable delay, having regard to the nature of the thing to be done.' So that with respect to this particular statute, the I.C.C. regulation, it is for you to determine whether or not there has been a violation. If you find that at the particular time the operator, Mr. Bailey, was determining whether or not his car or vehicle was disabled, and he had not come to a determination of that, then it is up to you to determine whether or not, in view of the time involved, he acted without unreasonable delay, having regard to the nature of the thing to be done. Now that, of course, would apply only to the truck

operated by Mr. Bailey. It doesn't appear that the truck operated by Albertelli was disabled, so that this particular regulation, and the regulation dealing with the Connecticut law concerns only vehicles which have been disabled or under the Connecticut law, which cannot be operated or were stalled. But there is also another statute, or I.C.C. regulation . . . ."

The court then referred to the requirements of § 192.23, which relates to emergency signals for stopped or parked vehicles, and pointed out that the driver of such a vehicle must immediately place, on the traveled portion of the highway, at the traffic side of the vehicle, a lighted fusee, red electric lantern or red emergency reflector, and that if the stop is to exceed ten minutes the driver must place emergency signals as required in the case of a disabled vehicle. The court then went on to say: "Now, this statute also applies with respect to the conduct of both operators. You will recall, the statute says, when any motor vehicle is stopped upon the traveled portion of any highway or shoulder thereof for a reason other than disablement, or necessary traffic stops, so that with respect to the conduct of both of these particular operators it was incumbent upon them to follow the terms of the statute. If you find that they did not, then that would be negligence as a matter of law."

To these instructions the defendants excepted, claiming that the I.C.C. regulations were the prevailing law and that the Connecticut statute did not apply; that the charge seemed to give to the driver the privilege of determining, before he set flares, whether his vehicle was disabled; that the I.C.C. regulations, under both § 192.22 and § 192.23, required the driver to set flares immediately, before

he attempted to find out what the situation was as to the vehicle; and that the court's definition of "immediately" was incorrect.

After deliberating for some time, the jury requested further instructions as to the defense of contributory negligence so far as it related to the setting of flares. The court again instructed the jury on the Connecticut statute and repeated, in effect, what it had said previously: "Now, you will recall the testimony as to what happened. Mr. Bailey got out of the car. He went around to the left, opened the hood to see what was the trouble. In view of the statute adding 'becomes stalled, or was in such condition that it could not be operated on the highway,' he is entitled to determine what the situation is. Then it is incumbent upon him to immediately make use of those particular flares." The court again charged on the I.C.C. regulations and redefined the word "immediately." To these supplemental instructions the defendants again took exception, repeating, in effect, their previous objections.

If the trucks operated by the plaintiffs were engaged in interstate commerce, it was the duty of the drivers to conform to the requirements of the safety regulations promulgated by the interstate commerce commission. These regulations were adopted pursuant to the authority granted by Congress. 49 Stat. 546, as amended, 49 U.S.C. § 304 (a). They have the force and effect of law. *Atchison, T. & S.F. Ry. Co. v. Scarlett,* 300 U.S. 471, 474, 57 S. Ct. 541, 81 L. Ed. 748, rehearing denied, 301 U.S. 712, 57 S. Ct. 787, 81 L. Ed. 1365; *Interstate Motor Lines, Inc.* v. *Great Western Ry. Co.,* 161 F.2d 968, 970 (10th Cir.). Violation of them constitutes negligence per se. *Hyde* v. *Connecticut Co.,* 122 Conn. 236, 239, 188 A. 266.

The right of the state to prescribe by statute or regulation for the promotion of the public safety upon its highways, with respect to motor vehicles operated thereon in interstate commerce, is conditioned on the absence of national legislation covering the matter. When Congress has exerted its paramount legislative authority over a particular phase of interstate commerce, inconsistent state laws on that subject are superseded. *Missouri, K. & T. Ry. Co.* v. *Harris,* 234 U.S. 412, 417, 34 S. Ct. 790, 58 L. Ed. 1377. There can be no divided authority over interstate commerce; regulatory legislation by Congress or under its authority is supreme. *Chicago, R.I. & P. Ry. Co.* v. *Hardwick Farmers Elevator Co.,* 226 U.S. 426, 435, 33 S. Ct. 174, 57 L. Ed. 284; *Missouri Pac. R. Co.* v. *Stroud,* 267 U.S. 404, 408, 45 S. Ct. 243, 69 L. Ed. 683; *Oregon-Washington R. & Navigation Co.* v. *Washington,* 270 U.S. 87, 101, 46 S. Ct. 279, 70 L. Ed. 482. State statutes in conflict with congressional action are superseded, even where they were adopted with respect to matters only incidentally affecting interstate commerce or as a proper exercise of the police power. *Savage* v. *Jones,* 225 U.S. 501, 529, 32 S. Ct. 715, 56 L. Ed. 1182; *Reid* v. *Colorado,* 187 U.S. 137, 146, 23 S. Ct. 92, 47 L.Ed. 108. The same general principles apply with respect to the regulations of federal commissions. *Pennsylvania R. Co.* v. *Public Service Commission,* 250 U.S. 566, 568, 40 S. Ct. 36, 63 L. Ed. 1142.

The I.C.C. motor carrier safety regulations as to emergency signals for stopped vehicles are detailed and complete. They cover the same subject matter as § 14-95 of the General Statutes. They are sufficiently comprehensive to supersede the Connecticut statute. *University Overland Express, Inc.* v. *Alsop,*

122 Conn. 275, 286, 189 A. 458. In view of the pleadings and the claims of proof, the jury were required to decide whether the trucks owned and operated by the plaintiffs were engaged in interstate commerce. The plaintiffs refused to make any concession on this point, maintaining that the question was one of fact for the determination of the jury. The state statute would govern the conduct of the plaintiff drivers if the jury found the trucks were engaged in intrastate commerce; the I.C.C. regulations would apply if the jury found the trucks were engaged in interstate commerce. The issue required that the distinction be emphasized in the charge to the jury and that interstate commerce be defined as contrasting with intrastate. But the charge contained no statement of legal principles which would assist or guide the jury in determining whether the plaintiffs' trucks were engaged in interstate commerce.

The word "immediately" means without intermediary; in direct connection or relation; closely. Webster's Third New International Dictionary; *Williams* v. *Campbell,* 84 Kan. 46, 50, 113 P. 800. As used in a statute requiring the driver of a truck, upon bringing it to a stop, to place lighted flares "immediately," the word means with reasonable and proper diligence or promptly, under all the circumstances. *Gleason* v. *Baack,* 137 Neb. 272, 277, 289 N.W. 349. In the present case, the definition of the word as given by the court conformed to that found in *O'Brien* v. *Wise & Upson Co.,* 108 Conn. 309, 312, 143 A. 155; see *L. & E. Wertheimer, Inc.* v. *Wehle-Hartford Co.,* 126 Conn. 30, 34, 9 A.2d 279. The definition was a proper and acceptable one.

The difficulty in this case arises because of the attempt on the part of the court to harmonize the requirements of the Connecticut statute with those

of the I.C.C. regulations. This could not be done. The regulations impose a much greater affirmative obligation on the operator than the statute. At one time, the court told the jury that a driver was entitled to determine, before it became incumbent on him to place flares, whether his car had become stalled or such a condition existed that it could not be operated on the highway. At another time, the jury were told that the law required a driver to place flares "immediately," as that word had been defined. Throughout the instructions, the court referred to "statute" and "regulation" interchangeably, at times referring to the I.C.C. regulations as a statute and to the Connecticut statute as a regulation. It may well be that this created some of the confusion which caused the jury to request further instructions relating to the setting of flares. A charge should not contain contradictory statements of the law or statements which might be so construed by the jury. *Borsoi* v. *Sparico,* 141 Conn. 366, 371, 106 A.2d 170. Manifestly, the jury were confused by the court's instructions. The charge on this crucial feature of the case was inadequate for the guidance of the jury.

It is unnecessary to discuss the other claims of error.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.