Hillsborough,
No. 5794.

### NATIONAL TRANSPORTATION COMPANY

*v.*

### FALTIN MOTOR TRANSPORTATION COMPANY.

Argued October 2, 1968.
Decided June 30, 1969.

*Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *William
S. Orcutt* (*Mr. Orcutt* orally), for the plaintiff.

*Devine, Millimet, McDonough, Stahl & Branch* and *E. Donald
Dufresne* (*Mr. Dufresne* orally), for the defendant.

LAMPRON, J. Action to recover property damages arising out
of a collision between a tractor-trailer in the care, custody and
control of the plaintiff and a tractor-trailer of the defendant.
The accident happened on the Connecticut Turnpike on March
12, 1962. Trial by the Court (*Flynn,* J.) resulted in a verdict
for the defendant. Plaintiff's exception to the denial of its motion
to set aside the verdict was reserved and transferred.

The Court's "findings, rulings and verdict" are in part as
follows:

"On Monday, March 12, 1962, at about 5:20 A.M., a tractor-
trailer operated by Walter A. Hoelck, Sr., an employee of the

plaintiff, National, was parked facing westward in the breakdown lane of the Connecticut Turnpike, in Stamford, Connecticut, when it was struck from the rear by a tractor-trailer operated in the same direction by Harlan C. Nelson, Jr., an employee of the defendant, Faltin.

" . . . [P]laintiff's driver . . . left National's terminal at Montville, Connecticut, and was headed for Kearney, New Jersey, . . . after driving approximately 70 miles, Hoelck had some difficulty with his tractor . . . he contacted National's terminal . . . and another tractor was sent to him. The replacement tractor . . . was attached to his trailer, and he then resumed his trip. This replacement tractor . . . was not fully loaded with fuel when it was released from the Bridgeport terminal, and its fuel gauge was not working properly. Normally, tractors when released from a terminal, are fully loaded with fuel, and Hoelck assumed that the tanks were fully loaded when this tractor was delivered to him.

"After Hoelck had driven this replacement tractor and trailer for approximately 2 1/2 hours, it began to spit and cough . . . Hoelck thought the tractor had run out of gas so he pulled over to the extreme right hand side of the Turnpike and, after coasting, came to a stop in the breakdown lane. The tractor-trailer was off the traveled way, except that the left rear of the trailer protruded about 18 inches into the right hand travel lane. The vehicle was disabled on a straight stretch of the Turnpike, but, due to the heavy rain and wind, the visibility was poor.

"Hoelck turned the valve that switches the gas supply from one tank to the other and tried to start the vehicle for approximately 5 minutes. Then, after realizing that his tractor was not going to start, Hoelck took one of the 3 kerosene pot flares with which his vehicle was equipped and walked approximately 150 feet behind the trailer to set out the flare. Hoelck attempted to light the flare with book matches, but, due to the wind and rain, it would not light, and then he returned to his tractor to attempt to light the flare in the cab. Hoelck was sitting in the right front of his cab trying to light the pot flares when his vehicle was struck in the left rear by the right front side of the Faltin tractor-trailer.

"Hoelck was stopped approximately a total of 15 minutes prior to the accident. During this time, no fusees, flares or emergency signals were placed in the highway. There were 9 lights

on the rear of the plaintiff's parked vehicle plus 2 arrow flashing lights. These lights were on at the time of the accident along with two arrow flashing lights in the front. The overhead Turnpike lights were on at the time of the accident. However, due to the poor weather conditions, a person on the highway could not see clearly ahead for a distance of 500 feet.

"The defendant's driver, Harlan C. Nelson, Jr., was on a trip for Faltin from Manchester, New Hampshire, which was to have terminated in New York City . . . . There was a downgrade of approximately 1/4 mile prior to the point of impact. At the beginning of the downgrade Nelson could see approximately 150 feet ahead of him with his headlights on low beam . . . . because high beam lights are not permitted on the Turnpike. Nelson descended the downgrade at a speed of approximately 55 miles per hour. Then the road turned slightly uphill. He travelled uphill for a short distance at a speed of approximately 40-45 miles per hour in the right lane when the accident occurred. Nelson stated that he was about 8 feet away from the National vehicle when he first saw it, and he did not notice the lights on it.

"When Nelson saw the National vehicle, he took his foot off the throttle and swerved to the left but could not avoid the collision. To avoid a jacknife, he did not apply his brakes. Nelson testified that, if he had seen the National vehicle from a distance of 25 feet, he could have avoided the collision. . . . .

"There were 3 travel lanes on the Turnpike that were clear of traffic. There was nothing to prevent Nelson from passing to the left of the National vehicle, except, as Nelson stated, that it was the habit of truckers to stay in the right lane. Nelson also admitted that he pleaded guilty in the Stamford Circuit Court to a charge of failing to pass on the left. I find that the defendant's driver, Nelson, by reason of excessive speed, failing to pass to the left and failing to keep a proper lookout, was guilty of negligence under the circumstances . . . and that his negligence . . . . was a proximate cause of the collision . . . .

"The plaintiff, National, would be entitled to recover . . . $6,383.50 [damages paid to owner of tractor-trailer under an agreement] if it were free from fault. The defendant, Faltin, contends that the plaintiff is barred from any recovery . . . [because]

National failed to comply with Section 192:22 (b) of the Interstate Commerce Commission Regulations, claiming that such a violation is negligence as a matter of law.

"The plaintiff, National, was engaged in the transportation of freight in interstate commerce at the time of this collision. Under the Connecticut case of *Bailey* v. *Bruneau's Truck Service, Inc.*, 149 Conn. 46 . . . the safety Regulations promulgated by the Interstate Commerce Commission, which were effective at the time of the accident, supercede the law of Connecticut and are controlling.

"At the time of this collision, the National vehicle was disabled in the breakdown lane of the Turnpike with at least 18 inches of its left rear end protruding into the right hand travel lane. It was not clearly discernible to persons on the highway at a distance of 500 feet even though the Turnpike lights were on. Section 192:22 (b) of the Interstate Commerce Commission Regulations provides that under these circumstances the National driver 'shall immediately place on the traveled portion of the highway at the traffic side of the disabled vehicle, a lighted fusee, a lighted red electric lantern or a red emergency reflector.'

"In the *Bailey* case, the Connecticut Supreme Court defined 'immediately' as follows: 'The word "immediately" means without intermediary; in direct connection or relation; closely . . . . As used in a statute requiring the driver of a truck, upon bringing it to a stop, to place lighted flares "immediately," the word means with reasonable and proper diligence or promptly, under all the circumstances.'

"Hoelck did not place a lighted fusee or the other emergency signals on the highway as required by Section 192:22 (b). Hoelck had fusees aboard his tractor, and it is found that he had adequate time to put same on the highway during the 15 minute period in which he was stopped. Under the law of the *Bailey* case, National's failure to comply with the Interstate Commerce Commission Regulations constitutes negligence *per se*. Such negligence on the part of National's driver, Hoelck, which was imputable to National, was also a proximate cause of the collision and the damage resulting to National therefrom . . . .

"As it is found and ruled that both the plaintiff and defendant

were negligent and that the negligence of both the plaintiff and defendant were proximate causes of the accident, there shall be: Verdict for the defendant."

Plaintiff contends that the Trial Court erred in holding that Hoelck's failure to comply with the Interstate Commerce Commission Regulations constituted negligence *per se*. It maintains that, even though Hoelck may not have complied with the terms of a regulation, if his conduct was reasonable under the existing circumstances, his failure to comply is excusable and not negligence. The parties agreed "that the law of Connecticut is applicable" and that the Trial Court could "go ahead and notice Connecticut law."

It is well established Connecticut law "that the violation of a statute designed for the protection of the public is in itself negligence irrespective of whether the conduct which constitutes the violation is that of a reasonably prudent person." *Jacobs* v. *Swift & Co.*, 141 Conn. 276, 279. In other words, a violation of such a statute constitutes negligence *per se*. *Danzell* v. *Smith*, 150 Conn. 35, 39, Safety Regulations, such as the ones in question here, promulgated by the Interstate Commerce Commission, have as a principal purpose the protection of the public traveling upon the highways. See *Felbrant* v. *Able*, 80 N. J. Super. 587, 598. They have the effect of law in Connecticut and supercede any State statute in conflict therewith. A violation thereof constitutes negligence *per se. Hyde* v. *Connecticut Co.*, 122 Conn. 236, 239; *Bailey* v. *Bruneau's Truck Service*, 149 Conn. 46.

The cases of *Romansky* v. *Cestaro*, 109 Conn. 654 and *Iudica* v. *DeNezzo*, 115 Conn. 233 are not apposite. They deal with involuntary violations of a statute because of unknown defects in equipment. There was no such evidence in this case. The Trial Court properly ruled that a violation of the Interstate Commerce regulation No. 192.22 would constitute negligence *per se. Essam* v. *New York N. H. & H. R. Co.*, 140 Conn. 319.

It provides in part as follows:

"192.22 Emergency signals; disabled vehicles.

"(a) *Turn signals.* Whenever any motor vehicle is disabled upon the traveled portion of any highway or the shoulder thereof, during the period lighted lamps are required, except

where there is sufficient all-night street or highway lighting provided as such to make it clearly discernible to persons on the highway at a distance of 500 feet, the driver of such vehicle shall immediately, upon learning of the disability, flash the two front and two rear turn signals simultaneously as a vehicular traffic hazard, warning and continue such flashing until he shall have placed the portable emergency signals required by [paragraph (b)] . . . .

"(b) *Fusee, lantern, or reflector.* The driver of such vehicle shall immediately place on the traveled portion of the highway at the traffic side of the disabled vehicle, a lighted fusee, a lighted red electric lantern, or a red emergency reflector."

Although the evidence was in conflict, the Trial Court could properly find that there was insufficient "all-night street or highway lighting" to make plaintiff's disabled vehicle "clearly discernible to persons on the highway at a distance of 500 feet; thus requiring the driver to "immediately place on the traveled portion of the highway" an emergency signal required by the regulation.

Plaintiff's driver testified that a fusee is "self igniting" and that there is no problem lighting it such as he encountered from the rain and wind in trying to light a pot flare. He also testified that had he been able to light the flare he had adequate time before the accident to place it in the highway 150 feet behind his trailer. The Trial Court could properly find on the evidence that in the approximately 15 minutes his truck was stopped on the side of the road before the collision, plaintiff's driver did not place in the highway any of the required emergency signals "with reasonable and proper diligence or promptly under all the circumstances" and was in violation of the regulation requiring that he do so "immediately." *Bailey* v. *Bruneau's Truck Service,* 149 Conn. 46.

Plaintiff also contends that it was entitled to a verdict because its driver, Hoelck's conduct was not the proximate cause of the accident, that defendant driver's supervening negligence rendered Hoelck's antecedent negligence remote and immaterial, and that defendant had the last clear chance to avoid the accident.

There is no doubt that, under Connecticut law, to prevent plaintiff's recovery on account of defendant's negligence, Hoelck's

breach of the regulations must have been a proximate cause of the damages sought. *Worden* v. *Francis,* 148 Conn. 459; *Coughlin* v. *Peters,* 153 Conn. 99. "The correct method of determining the existence of causal relationship is to look back from the injury to the negligent act." *Palombizio* v. *Murphy,* 146 Conn. 352, 359. There was evidence that in spite of all the lights on plaintiff's truck the defendant's driver did not see it until he was 8 feet from it. There was further evidence that if he had seen the truck when he was 25 feet from it he probably could have swerved his vehicle to the left and avoided the collision. The Trial Court could properly find on the evidence that plaintiff's negligence in not having placed one of the required emergency signals in the highway prevented the defendant from seeing the plaintiff's truck in time to avoid the collision and that the latter's negligence was a proximate cause of the accident.

Plaintiff correctly maintains that the Connecticut doctrine of last clear chance differs from that which prevails here. In New Hampshire for the last clear chance doctrine to apply, among other factors, the person charged with the last opportunity to avoid the accident must in fact know of the other party's presence in a position of danger, and of his oblivion to the danger or inability to escape from it. Lack of actual knowledge on either point due to negligence is not the equivalent of knowledge in fact. *Clark* v. *Railroad,* 87 N. H. 36, 38, 39. In Connecticut, on the other hand, present all other factors necessary for the last clear chance, the doctrine would apply if the party to be charged lacked actual knowledge but in the exercise of due care would have known of the other's presence and of his oblivion to the danger or inability to escape. *Caplan* v. *Arndt,* 123 Conn. 585, 588.

However, the Trial Court could properly find and rule on the evidence, as it did, that Hoelck's negligence "was a proximate cause of the collision" and "that the negligence of both the plaintiff and defendant were proximate causes of the accident." This negatives plaintiff's contention that the defendant had the last clear chance to avoid the collision and that Nelson's negligence was the "final and decisive factor in producing" the accident. Restatement (Second), Torts, *s.* 479, *comment* a. As previously stated counsel agreed that the case was to be governed by the law of Connecticut and that the Trial Court could "go

ahead and notice Connecticut law." We have no reason to assume that the Trial Court's findings and rulings that the plaintiff's negligence was a proximate cause of the collision and that the negligence of both parties were proximate causes of the accident were not made within the contexts of the law of Connecticut on last clear chance. See *Stone* v. *Howe*, 92 N. H. 425.

*Judgment for defendant.*

All concurred.