NATALIE M. CITERELLA v. THE UNITED ILLUMINATING COMPANY

KING, C. J., ALCORN, HOUSE, COTTER and RYAN, Js.

Argued October 14—decided December 23, 1969

*William L. Hadden,* with whom were *Herman M. Levy* and, on the brief, *John K. Knott, Jr.,* for the appellant (plaintiff).

*William R. Murphy,* with whom was *Michael J. Dorney,* for the appellee (defendant).

RYAN, J. This is a negligence action in which the plaintiff seeks to recover for electrical burns incurred when she alighted from her automobile on a public highway and came in contact with one of the defendant's power lines which had fallen during a storm and had become attached to her car. The jury returned a verdict for the defendant, and the plaintiff has appealed to this court.

In her complaint the plaintiff alleged that on September 12, 1960, at about 4 p.m. while operating her

automobile on Silver Sands Road in the town of East Haven, her car was snagged by a fallen street light wire owned and controlled by the defendant; that as she attempted to leave her car she sustained electric shocks and burns from the electricity carried by the wire; that her injuries were caused by the negligence of the defendant in that it failed to inspect properly trees growing near its wires; that it failed to remove or reinforce branches of such trees when it knew or should have known that large tree branches were in a condition which would cause them to fall during a windstorm; that it failed to inspect properly the insulation of its live wires; that it permitted high-voltage wires to be near lower-voltage wires without properly insulating them and preventing such wires from coming together; that, when it knew or should have known that its wires were in a condition of disrepair, it failed to repair their insulation; that, after notice that the wire which injured the plaintiff had fallen, it failed to shut off the power in this wire or to safeguard it within a reasonable period of time; that, after knowledge of the approach of a windstorm, it failed to take prompt action for the protection of travelers on the highway; that, when it knew or should have known of the likelihood of branches falling in the vicinity of the present accident, it failed to warn travelers or to take any measures to protect them; that it did not observe the ordinary standards of care of a company engaged in the distribution of electricity; and that it failed to observe the standards of care of § 2.02, a regulation of the public utilities commission effective September 17, 1959. See Code of Electrical Standards and Specifications, P.U.C. Docket No. 9000.

The defendant denied the allegations of negligence

and pleaded by way of special defense that the plaintiff was chargeable with contributory negligence in that she operated her car on the highways during a hurricane when she knew or should have known that the wind was causing tree limbs and utility wires to come down and when she knew or should have known that limbs and utility wires were down in the roadway on Silver Sands Road; that she failed to keep a proper lookout for downed wires and failed to exercise reasonable care to avoid them; and that she halted her vehicle and attempted to alight therefrom when she knew or should have known that this would expose her to danger of injury. In her reply the plaintiff denied the allegations of the special defense.

The plaintiff made the following claims of proof: On September 12, 1960, at about 4 p.m. the plaintiff was operating a car on Silver Sands Road near the intersection of Hill Street, in East Haven. Between 1:30 p.m. and 2 p.m. on that day, an energized wire maintained by the defendant was broken by a falling tree limb, and a part of that wire, still energized, was in the traveled portion of Silver Sands Road and came in contact with the plaintiff's car. The plaintiff stopped her car and attempted to alight, and when she did so she incurred severe burns caused by the wire. Prior to the fall of the limb and wire, an expert examination would have revealed that the limb was subject to breaking by a strong wind and if the limb broke and fell it was likely, because of its position, to break energized wires. At 2:15 p.m. or earlier the defendant was notified that the line was down in the area described, on Silver Sands Road, but it did nothing to remedy the condition. The storm which occurred on that day, although named "Hurricane Donna," never, in fact,

reached hurricane proportions at the scene of the plaintiff's accident. The highest reported gusts in the area were from fifty-three to sixty-two miles per hour. Storms designated as "hurricanes" were experienced in the area of the plaintiff's accident in 1938, 1944, 1954 and 1955.

The defendant claimed to have proved the following facts: In 1960, the defendant maintained 3769 miles of wire in its New Haven division and 4029 miles of wire or cable in its Bridgeport and Center divisions. In September, 1960, it had a written storm emergency plan including special equipment for communications during an emergency. It was aware of the approach of the storm prior to September 12, 1960, and reviewed its emergency plan, equipment and available personnel. It assigned duties to its employees in anticipation of its use of the plan and made other preparations to meet the emergency. On the morning of September 12, 1960, the defendant assigned to emergency storm duty its own line crews and tree crews of the New England Tree Expert Company, an independent contractor under contract to the defendant. On that day, in addition to its own line crews who were working double shifts, the defendant had additional contract crews from the Utility Line Construction Company who worked double shifts through the storm and during the evening. A report of "wire down" or "wire burning" could involve either a primary wire (4160 or 2400 volts) or a secondary wire (120 to 240 volts). It was not possible to determine from the telephoned reports whether a particular down wire was of high or low voltage, and dispatchers used their best judgment in assigning crews to the various jobs. Between 3 p.m. and 3:18 p.m. a limb fell on Silver Sands Road and caused primary, second-

ary and street light wires to break and fall to the street. This, in turn, caused two street light wires on nearby poles to break, one of which became energized by contact with a primary wire. The plaintiff, who lived near the intersection of Silver Sands Road and Hill Street, left her home about 3:30 p.m. and drove her car to a nearby grocery store but, upon finding the store closed, started back home and drove along Silver Sands Road toward the intersection of Hill Street. There were alternative routes by which the plaintiff could have reached her house. It was readily observable to the plaintiff that there were wires and a branch down in the street. The plaintiff stopped for a stop sign and, at that time, noticed a long wire attached to a loose chrome strip on the right side of her car. The plaintiff tried to disengage the wire by backing up and moving to the left, and she was aware at that time that there was a hazardous condition. Although she could have moved to the right side of the car to see if the wire was still on the car, she did not do so. The plaintiff assumed that the wire was off the car because she had pulled so far to the side that she believed she could get out of the car with safety. When she stepped on the roadway she suffered electrical burns. At about 4 p.m. the defendant was notified of the accident and immediately dispatched a crew to the scene. The defendant had no way of knowing from the information contained in the telephoned report received at 3:18 p.m. that the situation resulting from down wires on Silver Sands Road was any more dangerous than any one of the numerous other down-wire reports it had received and was receiving at that time. The tree limb which fell on the wires and caused them to break was a sound strong limb, and it was impossible to antici-

pate in advance which limbs would break. During the first half of 1960, the New England Tree Expert Company, under its contract with the defendant, had examined and trimmed trees in the vicinity of the defendant's wires in the area in which the plaintiff was injured.

The plaintiff's assignments of error are directed to the charge as given by the trial court and to the court's refusal to charge in accordance with the plaintiff's requests. The plaintiff took exception to the portion of the charge wherein the court construed § 2.02 of the regulations of the public utilities commission as meaning that the duty of the defendant was to use every reasonable safeguard known to those in the business of the defendant company or in similar lines of business to prevent injury to the plaintiff. The plaintiff claimed that the standard of care required was much higher than that given by the trial court in its instructions to the jury. Section 2.02 of the regulations (Code of Electrical Standards and Specifications), as set forth in docket No. 9000 of the commission, effective September 17, 1959, provides as follows: "ACCIDENTS a. Every utility shall use every effort to properly warn and protect the public from danger and shall exercise all possible care to reduce the hazard to which employees, customers and others may be subjected by reason of its equipment and facilities." The plaintiff urges that the regulation has the force and effect of a statute; that by its terms it imposes strict liability on electric power companies; and that the court committed prejudicial error in failing so to instruct the jury. The court charged the jury as follows: "Under this regulation, the defendant was required to employ every reasonable precaution or safeguard known to those possessed of the knowl-

edge and skill requisite for the safe treatment of electricity and for providing against all dangers incident to its use. However, neither under this regulation nor under the common law was the defendant a guarantor or insuror of the safety of any person who might be injured by its electric facilities. Liability cannot be imposed merely because an injury may have been caused by one of its installations. Neither would this regulation require, despite the use of the words 'every effort and all possible care,' that the defendant take precautions which would be unreasonable to require under the circumstances, or which were not possible as a practical matter for a power company to adopt, even though such precaution might have been theoretically possible. This regulation did not require that the defendant safeguard all of its wires against every tree branch which might possibly fall upon them in a storm, or that it safeguard instantly every wire which might come down during a storm. Its duty was to exercise in the operation of its electric business the highest degree of care and skill which may be reasonably expected of intelligent and prudent persons engaged in such a business, in view of the instrumentalities provided and the dangers reasonably to be anticipated, as well as the general situation confronting the defendant." The instruction as given generally followed the lines of a charge applicable to a common carrier of passengers as set forth in our decisions. See *Yu* v. *New York, N.H. & H.R. Co.*, 145 Conn. 451, 455, 144 A.2d 56. The court also instructed the jury that a violation of this regulation by the company would constitute negligence per se.

The regulation in question was adopted by the commission pursuant to § 16-11 of the General Stat-

utes, which provides that "[t]he commission may order such reasonable improvements, repairs or alterations in such plant or equipment, or such changes in the manner of operations, as may be reasonably necessary in the public interest." In all its proceedings the commission, as a regulatory body, must act strictly within its statutory authority, within constitutional limitations and in a lawful manner. *Southern New England Telephone Co.* v. *Public Utilities Commission,* 144 Conn. 516, 523, 134 A.2d 351; *State ex rel. Pacific Telephone & Telegraph Co.* v. *Department of Public Service,* 19 Wash. 2d 200, 215, 142 P.2d 498. Within their scope the regulations of the commission have the force of statutes, and a violation of a valid regulation of the commission is negligence per se. *Hyde* v. *Connecticut Co.,* 122 Conn. 236, 240, 188 A. 266; see *Bailey* v. *Bruneau's Truck Service, Inc.,* 149 Conn. 46, 54, 175 A.2d 372.

Both parties to this action are in agreement that if the regulation is unreasonable, it is invalid. In interpreting the meaning of a statute or regulation, it should be construed, if it reasonably can be done, so as to make it valid. *Carilli* v. *Pension Commission,* 154 Conn. 1, 8, 220 A.2d 439; *State* v. *Doe,* 149 Conn. 216, 229, 178 A.2d 271. The plaintiff urges that her request to charge should have been given imposing liability on the defendant if there was anything at all which was within the capacity or ability of the defendant to do to prevent injury to the plaintiff. As in the case of a statute, the regulation must be construed according to the commonly approved usage of the language. "Feasible" and "practicable" are synonyms of "possible." Webster, Third New International Dictionary. "Possible" means "practicable." *Harlev* v. *Sanitary District of*

*Chicago,* 107 Ill. App. 546, 566; *Norris* v. *Elmdale Elevator Co.,* 216 Mich. 548, 553, 185 N.W. 696. The words "possible" and "practicable" are synonymous. *Potomac Edison Co.* v. *State,* 168 Md. 156, 172, 177 A. 163; *Lauck* v. *Reis,* 310 Mo. 184, 201, 274 S.W. 827; 72 C.J.S. 245, Possible. Every "possible" effort requires nothing but what is "practicable and reasonable." *Sullivan* v. *Mountain States Power Co.,* 139 Ore. 282, 308, 9 P.2d 1038.

When a statute or regulation is open to interpretation, common sense must be used. *State* v. *Bello,* 133 Conn. 600, 604, 53 A.2d 381. Courts must assume that a reasonable and rational result was intended and construe the regulation accordingly. *Masone* v. *Zoning Board,* 148 Conn. 551, 556, 172 A.2d 891; *Bridgeport* v. *Stratford,* 142 Conn. 634, 644, 116 A.2d 508. The authority of the public utilities commission to promulgate regulations authorizes it to "order such *reasonable* improvements, repairs or alterations in such plant or equipment, or such changes in the manner of operation, as may be *reasonably* necessary in the public interest." (Emphasis added.) The construction claimed by the plaintiff would place upon electric power companies a burden greatly in excess of that authorized by the statute, and the regulation would be unreasonable and invalid. The trial court's recognition of the consequences of such a construction of the regulation is reflected in its instruction to the jury that the defendant was not required to take precautions which would be unreasonable or which were not possible as a practical matter for a power company to adopt. The trial court's construction of the regulation was legally correct, and there was no error in its instructions to the jury in that respect.

We turn now to the special defense of contribu-

tory negligence. The plaintiff urges that since the regulation created a rule tantamount to strict liability, contributory negligence on the part of the plaintiff was not a valid defense which could prevent her recovery and that the court erred in instructing the jury that if the defendant established contributory negligence on her part the verdict should be for the defendant. In the light of our construction of the regulation the court's instruction was correct.

There is no error.

In this opinion the other judges concurred.